Good morning, your honors, and may it please the court, Brianna Mircheff, I intend to reserve about three minutes of my time and I will watch my own clock. As Mr. Shelton so helpfully let in, there is an aspect of this Pereira issue that wasn't addressed in the earlier arguments. And I think that earlier arguments really illustrate that this court's case law has gotten to a really weird place. And it's gotten to a really weird place because this court has twice now deferred to BIA post-Pereira case law without ever asking whether our deference to those BIA decisions is appropriate. Our position is that the court should address that question head on, should determine that our deference is not warranted, and should follow either the plain text of the statute or the plain text of the regulations to the conclusion that an NTA's failure to include either time and place or the address of the immigration court deprives the court of jurisdiction and cannot be cured with a later notice of hearing. Counsel, you can do this in the order that you want, but I would like you to focus on at some point in your appeal, why, to us. You argue in your brief that the jurisdictional and due process defects in 2001 and 2005 removals invalidate the 2012 expedited removal. I don't understand why that is. As I understand it, the expedited removal was based on your client fraudulently presenting somebody else's identification and the removal, the expedited removal was based on that, not on the 2001 and 2005 removals. So why wouldn't that be enough to decide this case without getting into these issues? Sure, I'll address that right now. So the question of the expedited removal, I think, is best answered by this court's decision in Otora or Agile. In that case, the court said that one immigration proceeding can infect a later proceeding, and it found that there were three principles required for that infection to incur that transfer of problems. So the first one is that the order itself is fundamentally unfair. We think either because the court lacked jurisdiction or because of the issues with the U visa, the order here was fundamentally unfair, just as it was in Otora or Agile. The second principle required under Otora or Agile is that the non-citizen lacked a meaningful opportunity to challenge, to seek review of that issue. Again, if we're at the question where we're asking about the 2012 expedited removal, it would be because either the U visa problem or the jurisdictional problems deprived Ms. Aguilar-Reyes of... What jurisdictional problem? In the 2001 and 2005 removal... I still don't understand why that's relevant to 2012. Now, maybe I'm missing something here, counsel, but even if there was jurisdiction lacking in those other ones, what has that got to do with 2012, where somebody who isn't eligible for admission admits to presenting somebody else's ID when they enter the country? So the easiest answer to that is... Jurisdiction in 2001 and 2005, then it lacked jurisdiction to take away Ms. Aguilar-Reyes' LPR status. So if the court was without jurisdiction when it did that action, then she could not have been put into expedited removal proceedings, which are only for individuals who lack that status. Is that argument in your brief? Is that argument in our brief? I would have to go back and check. I can perhaps do that on rebuttal, but I think that would be the clearest argument. We certainly do argue that under Ochoa Orojel, the 2012 expedited removal was infected by those earlier proceedings. With respect, counsel, as my colleague just pointed out, the 2012 removal was entirely different. The predicate reasoning of that was entirely different than the ones in the earlier time, 2001-2005. I mean, in the last one, it's just plain wrong. And that's a whole separate basis. And the question really is, is that not an independent predicate that satisfies what the government needed to show in this case, regardless of what happened in the 2001-2005 period? And so that's the third requirement of Ochoa Orojel, right? There has to be some causal link between the earlier ones and the later ones. Here we would say that Ochoa Orojel would not have been in the position of using her sister's identification, had she not been stripped of her own lawful status in those earlier proceedings. So there is a causal relationship between the violation of her status. Temporality, I mean, isn't that the extreme of but-for causation? That is, if I am charged with speeding to the degree that they take away my driver's license and 10 years later, I'm convicted of driving without a license, I can't usually go back and re-litigate whether you should have taken away my driver's license 10 years ago. Isn't that what happened here? I mean, I think that's right. But I do think that the decision in Orojel supports this kind of reasoning, that if there's a causal link between the two, you can go back to that earlier proceeding and say, well, I would never have been in this situation had the earlier violations of due process not occurred. Had the immigration court lacked jurisdiction, had the court offered her a UBIS and had that been plausible, she wouldn't have been outside of the border using somebody else's identification. She would have had her own identification. I understand why you want this to be one giant amoeba, a little pseudopod sticking out, but let's go to the UBIS thing for a second. In that case, I think some of my colleagues have mentioned before, does the IJ have to be clairvoyant? There was nothing in the record that I can see that suggests that she was a victim of So on what basis, even had the district, I mean, the IJ known, I mean, how do you get a good amount out of that? Sure. Sure. So when the court has talked about IJs not needing to be clairvoyant, my memory at least is that it's been in the context of not having to predict changes in the law. There is clear case law under decisions like Aguiman, the United States, that the IJ has an obligation to develop the record, right? To pull out any facts that might support a woman like this, an LPR, 25, she lived in the country since four years old and had a one-year-old child, any grounds that might support that person being able to remain in the country. And here, you see the IJ do that. Let's assume for a moment that you have this fabulous IJ, want to develop the record, where In the record, was there anything about her being a victim of violent crime or that she assisted law enforcement? There's nothing in there, is there? Well I would have two answers to that. The IJ not only to explain, right, the IJ has some obligation to dig into the facts, right? So that's why the IJ in this very case asked, well, do you have children? How long have you been here? Do you have any proceedings, right? There's normally these questions they go through because they're on the hook under Aguiman to try to develop some basis for relief. Now the other answer to that question though, is that at the very least, an immigration judge cannot mislead a respondent about their eligibility. And here you have the IJ saying, I have no authority, I have no authority, but to remove you from the country. And that's not true. The VI has a whole body of case law about when immigration judges can put a case on hold or continue it out so that somebody can pursue U visa relief. This is not some sort of really obscure form of relief. In fact, it's the only relief that individuals who have aggravated felonies are eligible for. I see I'm down to a minute and a half. If there's other questions on that point in specific, otherwise I'll rebut. Thank you. Very well. Thank you. All right. Let's hear from the government. Mr. Dahlquist. Good afternoon. And may it please the court, Peter Dahlquist appearing on behalf of the United States. And I'd like to start by hitting on some of these really critical points that so far the court has raised. So first with respect to the 2012 expedited removal, that was a valid removal. That is valid independent of the two prior immigration removals in 2001 and 2005. And what is more with that, there was even if it wasn't, or even if moving on that, there was no clear and obvious prejudicial due process violation with respect to that expedited removal. And the third point that I'll highlight in more detail is also this issue of the U visa that neither IJ was required by due process to probe U visa eligibility because nothing in the record even hinted at U visa eligibility. So first kind of stepping back and talking about the 2012 expedited removal arguments, the defendant sought admission or sought to come into the United States by committing an act of deliberate fraud by using another person's lawful permanent residency card. So this defendant, unlike the defendant and Ochoa Oregel was subject to removal for one committing the act of fraud and also for seeking admission without a valid entry document. But by engaging in fraud, defendant was subject to expedited removal independent of any other proceeding. And that's what makes this case easily distinguishable from Ochoa Oregel who committed no fraud. He presented his own card that he did not know was valid. And it was only invalid because in a prior immigration proceeding that he was not present for, an immigration judge incorrectly decided that he had been convicted of an aggravated felony and severed his lawful permanent residency status. And that's just not what happened in this case. This defendant presented another lawful permanent, another person's lawful permanent residency card because she knew she had lost her status because she had been deported five times before. Moving on, moving on from that. So this is, that's an independent base for this prosecution and the court should affirm on that basis alone. But even moving beyond the basically argument that this is, that the 2012 is tethered to the other removal, the defendant makes the argument for the first time on appeal that there were due process violations with respect to the expedited removal. And that's subject to a plain air review. And there's just no facts in the record to support that any due process violation occurred with the 2012 expedited removal. The only declaration the defendant submitted in this case is on page 86 of the record. And in that declaration, the defendant said nothing about the expedited removal proceeding at all. And so the arguments that the defendant makes in the appellate brief should be rejected because arguments in an appellate brief are not evidenced and cannot show a due process violation. But even just considering them briefly on the merits, you know, the, one of the arguments the defendant makes is that she was never advised of a possibility of withdrawing her application for admission. But this court recognized in Cisneros Rescindes that the court has never, this court has never held that an immigration official has a duty to inform an alien of that possibility of withdrawing an application for admission. With the other claim of a due process violation, that has to do with record keeping requirements. And again, there's no factual basis to conclude that those record keeping requirements were not followed. And in fact, the government has asked the court to take judicial notice of those very forms. Those forms are authentic. I understand that the defendant is asserting that they challenges that and says, Hey, they're not authentic, but there's no basis to conclude that those forms didn't come from the ICE general counsel. And also that the defendant didn't sign those forms. The forms on those signatures is the same for signature that appears on the record on page 146. And maybe more important on this due process violation issue with the 2012 removal is that there was no clear and obvious prejudice. This case is indistinguishable from Barajas Alvarado and Garcia Gonzalez, where this court found it was implausible that those two defendants who entered the United States by fraud who had prior findings of inadmissibility and criminal records could have possibly withdrawn their applications for admission. The defendant sites two cases in her reply, but those cases are not on point in those cases. It's true. Those those litigants did withdraw applications for admissions, but they had no prior findings of admissibility and no criminal records. And so basically what those cases show is that a theoretical possibility that someone who's in a very different position than this defendant has this option available, but it is a possibility that a defendant with 10 convictions and five prior deportations who tried to enter the United States by committing a deliberate fraud would plausibly be eligible to withdraw the application for admission. Moving on to the 2001 and 2005 immigration judge removal proceedings, there were no due process violations with either proceeding because, you know, as the courts or as the immigration judges are not required to be clairvoyant and an immigration judge is not required to advise an alien of possible relief when there's no factual basis in the record to suggest that relief would be plausible. And I understand that counsel said something about, you know, that's basically narrowed to certain types of circumstances and certain types of relief. But this court in Lopez, Alaska is recognized as expanded or applied to asylum withholding of removal or relief under the convention against torture. And basically the justification for this rule, as the court stated in that case, is that any rule to the contrary basically required the immigration judge to probe things that were not raised in the record would invite meritless, quote, would invite meritless applications for relief, particularly since an application may well extend deportation proceedings for years, end quote. And that point makes a lot of sense with the UBISA in particular, where the immigration judge doesn't have the authority to adjudicate it, it's USCIS, and a lot of people who, a lot of people in general are going to have been victims of crimes. And so the very consequence that this court foresaw would certainly happen if the rule was that courts have to probe UBISA eligibility or any other form of relief that's not raised in the record. And then moving on just briefly to prejudice, this case is distinguishable from the two cases that the defendant cites on, you know, whether defendant was plausibly eligible for that's the Cisneros and Cervantes, in this case, a major distinguishing factor is the timing. You know, the defendant in this case was not prima facie eligible for a UBISA because she was a victim of a crime that had already been concluded and finalized when she was a lawful permanent resident. And so there was no really reason she needed a UBISA or would have even thought to apply for UBISA in 2001 or 2005. A UBISA applicant must be helpful to authorities and as the statute says, quote, investigating or prosecuting criminal activity, end quote. So there was no investigating or prosecuting going on in 2001 and 2005. By that time, the case had been concluded in 1998. And so in 2001, three years, the case had been final. In 2005, seven years, the case had been final. And in Cisneros, the court noted that the defendant could have been eligible in 2010. And that's when that case, that defendant was a victim, that kind of outside case was prosecuted or concluded in 2010. And so that makes sense. But in that case, that defendant actually applied for a UBISA in 2013 and it was rejected. And so the timing makes a big difference. Another, two other distinguishing factors, this defendant had prior immigration history. She didn't show up for immigration proceedings in 2002. And then by 2005, of course, there were the prior deportations. And then one final fact to distinguish this is the facts in the record to support plausibility. In Cisneros and Cervantes, both defendants submitted declarations from immigration practitioners who considered the facts of the case and basically offered an opinion that it would be plausible and wrote that in their experience, you know, similarly situated applicants have had visas granted. There were no similar declarations or evidence of any kind to support the same type of finding in this case. And pending any questions, I'll submit. I see my time is running low. Very well. Any questions by my colleagues? I'm failing that. And Ms. Mershoff, do you have any, anything that you want to rebut? I know you've been listening for a long time. There's just a couple of small points. The UBISA question, it's clear that UBISAs can be authorized in cases where the cooperation is done. And I think we cite the UBISA manual for that proposition, but that's an absolutely clear point of law. What is your response to the government's comment that the UBISA in this case, the facts that she wants to rely on here occurred in a different time period at a time when she had LPR status and that somehow that disqualifies her from relying on that at a later point. What's your view on that? Yeah. So that's what I think. I think it's very clear that an individual can rely on cooperation that occurred earlier, even if it predated the existence of the UBISA, law enforcement is permitted to certify based on that cooperation, even if the cooperation is done. Now, the fact that she was an LPR at the time. Do you have any authority for that position? Any cases? I believe what we cite in the brief is the UBISA law enforcement certification manual. I'm happy to take another look at that and make sure that that citation is there and I'll provide it to the court. If not, I figure time is up. That's my time is up. Whether either has an additional question for you in this matter. Either of my colleagues have questions? I think not. Thank you, your honors. Appreciate the time. The United States v. Aguilar-Reyes is admitted and the court stands in recess for the day.
judges: Boggs, M. Smith, Bennett